AUSTIN KNUDSEN
  *Montana Attorney General*
CHRISTIAN B. CORRIGAN
  *Solicitor General*
PETER M. TORSTENSEN, JR.
  *Deputy Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Attorneys for Defendant*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC.; DEEP CONNECTION TECHNOLOGIES, INC.; CHARYN PFEUFFER; JFF PUBLICATIONS, LLC; ANNA LOUISE PETERSON; LYNSEY GRISWOLD ; PHE, INC.; AND CONVERGENCE HOLDINGS, INC., | Case No. 9:24-cv-00067-DWM |
| *Plaintiffs,* | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana | |
| *Defendant.* | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION.................................................................................................1

BACKGROUND..................................................................................................2

LEGAL STANDARD ...........................................................................................5

ARGUMENT......................................................................................................6

I.   Plaintiffs fail to allege a plausible First Amendment claim..............7

    A. The First Amendment doesn't protect content that is
obscene for minors.......................................................................7

    B. Even if SB544 burdens speech, it survives any form of
scrutiny. ....................................................................................11

II.   Plaintiffs fail to state a substantive due process claim..................15

    A. No plaintiff has standing to pursue relief under a
substantive due process theory................................................15

    B. No plaintiff alleges a fundamental "liberty" interest. .............20

III. Plaintiffs fail to state a procedural due process claim....................22

IV. Plaintiffs fail to show standing for an equal protection claim. ........25

V.   Plaintiffs fail to state a Commerce Clause claim.............................28

VI.  Plaintiff JFF's Section 230 claim fails. ...........................................32

CONCLUSION ................................................................................................34

CERTIFICATE OF COMPLIANCE .....................................................................36

CERTIFICATE OF SERVICE .............................................................................36

TABLE OF AUTHORITIES

## Cases

*Armour v. City of Indianapolis*,
    566 U.S. 673 (2012) .................................................................. 12-13

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004) .................................................................. 7, 8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................. 5-6

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013) ............................................... 30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................. 5

*Benavidez v. Cnty. of San Diego*,
    993 F.3d 1134 (9th Cir. 2021) ............................................... 6

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011) .................................................................. 7, 8

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
    476 U.S. 573 (1986) .................................................................. 29-30

*City of Renton v. Playtime Theatres, Inc.*,
    475 U.S. 41 (1986) .................................................................. 13

*Dep't of State v. Muñoz*,
    2024 LEXIS 2716 (U.S. June 21, 2024) ............................... 19

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022) .................................................................. 19

*Erznoznik v. City of Jacksonville*,
    422 U.S. 205 (1975) .................................................................. 7

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................... 32, 33

*FCC v. Beach Comm'cn, Inc.*,
   508 U.S. 307 (1993) ........................................................ 12

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) .................................................. 22, 23

*FDA v. All. for Hippocratic Med.*,
   2024 LEXIS 2604 (U.S. June 13, 2024) ................................ 17, 20, 26

*Forsyth Cnty. v. Nationalist Movement*,
   505 U.S. 123 (1992) ........................................................ 11

*Free Speech Coal., Inc. v. Paxton*,
   95 F.4th 263 (5th Cir. 2024) ....................................... 11, 33

*Ginsberg v. State of New York*,
   390 U.S. 629 (1968) ............................................ 7, 11, 12

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) .................................................. 23, 25

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .................................................. 17, 20

*Hill v. Colorado*,
   530 U.S. 703 (2000) .................................................. 24, 25

*Hurley v. Hurley v. Irish-Am. Gay,*
*Lesbian & Bisexual Group of Boston, Inc.*,
   515 U.S. 557 (1995) .................................................. 9-10

*Lawrence v. Texas*,
   539 U.S. 558 (2003) .............................................. 16, 20-21

*Log Cabin Republicans v. United States*,
   658 F.3d 1162 (9th Cir. 2011) ........................................ 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................. 16, 26

*Meinecke v. City of Seattle*,
   99 F.4th 514 (9th Cir. 2024) ........................................ 15

*Miller v. California*,
413 U.S. 15 (1973) ................................................................ 2, 7, 24

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) ................................................................ 30, 31

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) ................................................ *passim*

*Pike v. Bruce Church, Inc.*
397 U.S. 137 (1970) ................................................................ 30, 31

*Reno v. ACLU*,
521 U.S. 844 (1997) .................................................................. 7, 8

*Robles v. Domino's Pizza, LLC*,
913 F.3d 896 (9th Cir. 2019) ...................................................... 23

*Rosenbaum v. City & Cnty. of S.F.*,
484 F.3d 1142 (9th Cir. 2007) .................................................... 27

*S. Pac. Co. v. Arizona*,
325 U.S. 761 (1945) ..................................................................... 29

*Sable Commc'ns of Cal., Inc. v. FCC*,
492 U.S. 115 (1986) ........................................................... 7, 12, 14

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
44 F.4th 867 (9th Cir. 2022) .................................................. 17, 20

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ................................................. 26, 28

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) ............................................................... 16, 26

*Unified Data Servs., LLC v. FTC*,
39 F.4th 1200 (9th Cir. 2022) ........................................... 16, 19, 26

*United States v. Hansen*,
599 U.S. 762 (2023) ............................................................ 6, 9, 25

*United States v. Salerno*,
481 U.S. 739 (1987) .................................................................... 6

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................ 6, 23, 24

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) .......................................................... 10, 13, 14

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) .................................................. 16

*Wooley v. Maynard*,
    430 U.S. 705 (1977) .............................................................. 9, 10

## OTHER AUTHORITIES

### United States Code

18 U.S.C. § 2201 .................................................................... 4

18 U.S.C. § 2202 .................................................................... 4

42 U.S.C. § 1983 .................................................................... 4

47 U.S.C. § 230 ................................................................ 32, 33

47 U.S.C. § 230(c) ......................................................... 32, 33, 34

47 U.S.C. § 230(c)(1) ........................................................ 33-34

47 U.S.C. § 230(c)(2) ..................................................... 32-33, 34

47 U.S.C. § 230(f)(3) ............................................................ 34

### Montana Code Annotated

§ 2-15-2001 ......................................................................... 4

§ 30-14-101 ......................................................................... 4

§ 30-14-103 ......................................................................... 4

§ 30-14-111 ......................................................................... 4

§ 30-14-159 ......................................................................... 4

§ 45-8-206 .......................................................................... 1

### Montana Senate Bill 544

§ 1(1) ....................................................................... *passim*

§ 1(2) ............................................................................. 3, 14

§ 1(3)(a)  .................................................................... 3-4

§ 1(3)(b)  .................................................................... 4

§ 1(4)  ...................................................................... 3, 28

§ 1(7)(a)  ................................................................... 2, 18, 22

§ 1(7)(d)  ................................................................... 2, 7, 12

§ 1(7)(f)(i) .................................................................. 3, 28

§ 1(7)(f)(ii)  ................................................................ 3, 28

§ 1(7)(g)  ................................................................... 18

§ 1(7)(g)(i)-(ii)  ............................................................ 11

§ 1(7)(h)(i) .................................................................. 3

§ 1(7)(h)(ii)(A)  ............................................................. 2

§ 1(7)(h)(ii)(B)  ............................................................. 3

§ 1(7)(i)  ................................................................... 2, 15, 23

§ 1(7)(j)  ................................................................... 3, 18

## INTRODUCTION

Like many states, Montana has long prohibited distributing obscene materials to minors.  Mont. Code Ann. §45-8-206.  But there is a growing sense across the political aisle that given the "corroding influence [of pornography] on minors" this just isn't enough.  The Montana legislature found that early exposure to pornography "contributes to the hypersexualization of teens," to "low self-esteem, body-image disorders," "problematic sexual behaviors," reduced "brain functioning and development," "emotional and medical illnesses," and "difficulty forming or maintaining positive, intimate relationships."   Montana Senate Bill 544 ("SB544"), Preamble, https://perma.cc/N8R6-HZF5.

To combat these concerns, the Montana Legislature passed SB544 to require commercial entities that publish or distribute online pornography, or similar content, to take reasonable steps to verify the age of their customers before displaying content that is materially harmful to minors.  But nothing in SB544 prohibits anyone from performing in, producing, or publishing online pornography, nor does it prohibit anyone from accessing it.  Plaintiffs—a nonprofit trade association and several individuals and entities—sued, claiming that SB544 facially violates the

First and Fourteenth Amendments, the Commerce Clause, and the Supremacy Clause.  But they fail to state a claim for relief on any of these theories, so this Court should dismiss their complaint.

## BACKGROUND

SB544 regulates only "commercial entit[ies][1] that knowingly and intentionally publish[] or distribute[] material harmful to minors on the internet from a website that contains a substantial portion of the material," §1(1), which is defined as "more than 33 1/3% of total material on a website," §1(7)(i).  Those regulated entities "must perform reasonable age verification methods" to limit their material to adults.  §1(1).  SB544 defines "material harmful to minors" by adding "with respect to minors" or "for minors" to *Miller*'s test for obscenity.[2]  SB544, §1(7)(d) ; *see also Miller v. California*, 413 U.S. 15, 24 (1973).

Regulated entities may select their preferred "reasonable age verification methods," including "government-issued identification," §1(7)(h)(ii)(A), a "digitized identification card[s]," or "any commercially

---

[1] SB544 defines "[c]ommercial entity" as "corporations, limited liability companies, partnerships, limited partnerships, sole proprietorships, or other legally recognized entities."  §1(7)(a).

[2] This brief cites SB544 using the following formulation to indicate section, subsubsection and so on: "§1(7)(d)."

reasonable method that relies on public or private transactional data,"[3]
*see* §1(7)(h)(i), (ii)(B).  Whoever performs the "required age verification
may not retain any identifying information of the individual after access
has been granted to the material."  §1(2).

SB544 also exempts some content and entities.  First, it doesn't ap-
ply to "any bona fide news or public interest": "broadcast," "website
video," "report," or "event."  §1(4).  Second, it "may not be construed to
affect the rights of any news-gathering organization," §(1)(4), which it
defines as an employee of a print, online, or mobile platform "newspaper,
news publication, or news source … of current news and public interest,"
§(1)(7)(f)(i), and an employee of a "radio broadcast station, television
broadcast station, cable television operator, or wire service," §(1)(7)(f)(ii).[4]

SB544 provides affected individuals a civil damages remedy if a cov-
ered entity refuses or fails to "perform reasonable age verification

---

[3] SB544 defines "transactional data" as "a sequence of information that
documents an exchange, agreement, or transfer between an individual,
commercial entity, or third party used for the purpose of satisfying a re-
quest or event."  §(1)(7)(j).  This data may include "records from mortgage,
education, and employment entities."  *Id.*

[4] The "news-gathering organization" exemption applies only to employees
while they are operating as employees, and it requires the employee to
document his or her employment.  §(1)(7)(f)(i)-(ii).

methods," §1(3)(a), or if it knowingly retains an individual's identifying information after performing the required age-verification, §1(3)(b).

SB544 doesn't expressly delegate enforcement authority to Montana's Attorney General, but as head of the Department of Justice, *see* Mont. Code Ann. §2-15-2001, the Attorney General is tasked with employing various enforcement measures authorized by Montana's Consumer Protection Act, *id.* §30-14-101, *et seq.*, including SB544, *id.* §30-14-159.  In certain instances, *id.* §30-14-103, the department of justice may initiate enforcement actions "to restrain by temporary or permanent injunction or temporary restraining order" the unlawful conduct after giving appropriate notice, *id.* §30-14-111.

Three groups of plaintiffs sued Montana's Attorney General under 42 U.S.C. §1983 and 18 U.S.C. §§2201-02: (1) Free Speech Coalition, Inc. ("FSC"), a nonprofit trade association representing individuals and businesses involved in the production, sale, and presentation of content that meets SB544's definition of "material harmful to minors," *see* Compl., ECF No. 1, ¶12; (2) four entities—Deep Connection Technologies, Inc., a Delaware corporation; JFF Publications, LLC, a Delaware limited liability company; PHE, Inc., a North Carolina corporation; and Convergence

Holdings, Inc., a Montana corporation, *id.* ¶¶14, 20, 29, 32 ("Entities"); and (3) three individuals—Charyn Pfeuffer, a writer and online adult content creator and performer; Anna Louise Peterson, Ed.D., LCPC, a Missoula-based psychotherapist and adjunct professor; and Lynsey Griswold, a writer, editor, and publisher focusing on "intersection of pornography, feminism, and sexuality," *id.* ¶¶17, 23, 26 ("Individuals").

Plaintiffs seek injunctive and declaratory relief under these claims: (1) violation of free speech rights under the First and Fourteenth Amendments, *id.* ¶¶86-90; (2) violation of due process and equal protection rights under the Fourteenth Amendment, *id.* ¶¶91-95; (3) violation of the Commerce Clause, *id.* ¶¶96-98; (4) violation of the Supremacy Clause and 47 U.S.C. §230, *id.* ¶¶99-102; and (5) the Declaratory Judgment Act, ¶¶103-07.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)—where plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5]  But a "formulaic recitation of the elements of a cause of action will not do," *id.* (citation omitted), nor will "conclusory allegations of law" suffice to defeat a motion to dismiss, *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021).

Plaintiffs raising facial challenges on First Amendment or vagueness grounds, must show a significant number of "realistic" unconstitutional applications of the statute that are "substantially disproportionate to the statute's lawful sweep."  *United States v. Hansen*, 599 U.S. 762, 770 (2023); *cf. United States v. Williams*, 553 U.S. 285, 304 (2008) (vagueness).  For all other facial challenges, Plaintiffs must show that "*no set of circumstances* exists under which the [statute] would be valid."  *Id.* at 769 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

### ARGUMENT

To state a claim under §1983, Plaintiffs must allege that "a person acting under the color of State law" violated "a right secured by the Constitution or laws of the United States."  *Benavidez*, 993 F.3d at 1144.

---

[5] The same plausibility requirements apply to motions to dismiss under Rule 12(b)(1) for failure to allege standing.  *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 486-88 (9th Cir. 2024).

I.   **Plaintiffs fail to allege a plausible First Amendment claim.**

   A. **The First Amendment doesn't protect content that is obscene for minors.**

Obscenity is a notoriously unclear area of law, but this much is settled: obscene content "is unprotected by the First Amendment" and may be regulated. *Miller*, 413 U.S. at 23. That's what SB544 does. It applies to "material harmful to minors," *see* §1(1), (7)(d), which SB544 defines to track *Miller*'s definition of obscenity tailored to minors.

The Supreme Court has recognized time and again that state legislatures may pass laws that protect minors from material that is "obscene as to youths." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1986). And this rule recognizes the commonsense truth that courts must "adjus[t] the definition of obscenity to social realities," including that some material that's appropriate for adults isn't appropriate for minors. *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 793-94 (2011) (quoting *Ginsberg v. State of New York*, 390 U.S. 629, 638 (1968)).

Neither *Reno v. ACLU*, 521 U.S. 844 (1997), nor *Ashcroft v. ACLU*, 542 U.S. 656 (2004), hold otherwise. *Reno* considered a challenge to the Communications Decency Act ("CDA") that criminalized sending or

displaying lewd messages in ways that would be available to minors. 521 U.S. at 859.  And it held the CDA provision unconstitutionally over-broad because it omitted *Miller*'s requirement that obscenity must relate to "sexual conduct."  *Id.* at 870, 873.  But SB544 neither criminalizes por-nography nor omits this requirement from *Miller*—it merely limits the distribution *to minors* of content that's *obscene to minors*.  *See* §1(1).  So SB544 doesn't suppress anything, let alone "a large amount of speech that adults have a constitutional receive."  *Reno*, 521 U.S. at 874.

*Ashcroft* fares no better despite minor similarities between SB544 and the federal Child Online Protection Act ("COPA") at issue there.  To begin, *Brown v. Entertainment Merchants Ass'n* reaffirmed after *Ashcroft* that states may protect minors from content obscene as to minors even if adults have a First Amendment right to view that content.  *See* 564 U.S. at 793-94.  And SB544 and COPA function quite differently.  COPA crim-inalized the posting of internet content, for "commercial purposes," that is "harmful to minors."  *Ashcroft*, 542 U.S. at 661.  But unlike COPA, SB544 isn't enforced by criminal penalties, *id.*; it's enforced by private civil actions and civil enforcement actions initiated by Montana's Attor-ney General.  It imposes no limitation *at all* on the creation of obscene

content, so *Ashcroft*'s core premise—that the challenged provision "suppresse[d] a large amount of speech," *id.* at 665—doesn't apply to SB544. Age-verification is the statutory obligation, not an affirmative defense as in COPA, so there's less risk that "speakers may self-sensor rather than risk the perils of trial." *Id.* at 670-71. That is, if regulated entities perform the required age-verification procedures, they won't violate SB544 no matter what content they offer. §1(1).

Plaintiffs' alternative theories fail too.[6]   *First*, they claim that SB544 compels speech by requiring "providers of online content to place an age-verification content wall over their entire websites," which "labels them as 'adult business[es].'" Compl. ¶3. But requiring commercial entities that provide age-restricted services to verify that their customers are legally able to access those services *doesn't* compel them to speak any message *at all*, much less Montana's preferred message. Neither *Wooley v. Maynard*, nor *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of*

---

[6] Plaintiffs allege in passing that SB544 is "substantially overbroad." Compl. ¶89. It isn't. SB544 doesn't restrict speech; even if it did, Plaintiffs cannot show that SB544's "realistic" and "[non-]fanciful … unconstitutional applications" are "substantially disproportionate to [SB544]'s lawful sweep." *Hansen*, 599 U.S. at 770. Because Plaintiffs' anemic allegations fail to identify a "lopsided ratio," the overbreadth doctrine's "strong medicine" isn't warranted here. *Id.*

*Boston, Inc.*, hold otherwise. *Wooley*, 430 U.S. 705, 717 (1977) (requiring motorists to display "Live Free or Die" motto on license plates impermissibly forced them to become couriers of the State's message); *Hurley*, 515 U.S. 557, 572-73 (1995) (requiring parade organizers to include voices they wished to exclude impermissibly made them "alter the expressive content of their parade"). SB544 doesn't require commercial entities to host any message, nor does it require them to alter their speech, so this Court should reject Plaintiffs' compelled speech theory.

*Second*, Plaintiffs claim that "by requiring the use of some particularized approval method as a condition to providing protected expression," SB544 imposes a "presumptively-unconstitutional prior restraint on speech." Compl. ¶3; *id.* ¶¶67-71, 87. Laws that constitute prior restraints give "public officials the power to deny use of a forum in advance of actual expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5 (1989) (quotation marks omitted). But SB544 does no such thing. It doesn't prevent adults from accessing age-restricted material they have a right to access—it requires only that commercial entities employ reasonable methods to verify that their customers are of age. It also doesn't create a permitting regime or require preapproval from government

10

officials.  *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).  Nor does SB544 give the Department of Justice broad discretion over whether an age-verification method is reasonable, *id.*—quite the contrary, SB544 identifies three specific age-verification methods that qualify, *see* §1(7)(g)(i)-(ii).  Because SB544 doesn't restrict speech before expression, establish a permitting scheme, or give discretion to any enforcement authority, it isn't a prior restraint.

### B. Even if SB544 burdens speech, it survives any form of scrutiny.

*Rational Basis.*  Even if this Court finds that SB544 implicates the First Amendment by regulating some content that is "materially harmful to minors"—but not obscene—it should apply rational-basis review under *Ginsberg.  See Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 267 (5th Cir. 2024) (applying rational-basis review under Ginsberg to Texas's age-verification law).  *Ginsberg* examined a statute prohibiting the sale of materials harmful to minors,[7] and it upheld the statute under

---

[7] That statute defined "materials harmful to minors" as "any description or representation" of "nudity, sexual conduct, sexual excitement, or sadomasochistic abuse when it":

> (i) predominant appealed to the prurient, shameful or morbid interest of minors;

rational-basis review based on the state's interests in the well-being of children and in preserving parental rights. 390 U.S. at 639-40.

SB544 easily survives rational-basis review. Montana's interest in regulating minors' access to online pornography is a "compelling interest." *Sable*, 492 U.S. at 126 (citing *Ginsberg*, 390 U.S. at 639-40). SB544 is also reasonably related to Montana's interest in protecting children. *Ginsberg*, 390 U.S. at 643. And no doubt the "strong presumption of validity" associated with this standard of review is too high a hurdle for Plaintiffs to clear. *See FCC v. Beach Comm'cn, Inc.*, 508 U.S. 307, 314 (1993). It's easy to see why. If states have a legitimate—*compelling*, even—interest in preventing children from accessing online pornography, it's more than reasonable to require publishers and distributors of such content to check their customers' age before they access age-restricted materials. And because rational-basis review doesn't require the government to "draw the perfect line nor even to draw a line superior to

---

> (ii) was patently offensive to prevailing standards in the adult community as a whole with respect to what was suitable for minors; and
>
> (iii) is utterly without redeeming social importance value for minors.

*Ginsberg*, 390 U.S. at 646; *see cf.* §(1)(7)(d).

some other line it might have drawn," SB544 easily passes constitutional muster. *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012).

***Heightened Scrutiny.*** Even if this Court holds that SB544 is subject to heightened scrutiny because it distinguishes between content, it survives such review under the secondary-effects doctrine. Under that doctrine, a statute targeted at the secondary effects of expressive conduct—*i.e.*, effects of noise on surrounding community—need *not* survive strict scrutiny. *Ward*, 491 U.S. at 798.

The secondary-effects doctrine is often used to evaluate states' regulation of sexually explicit, but non-obscene, expressive conduct like strip clubs. Consider *City of Renton v. Playtime Theatres, Inc.*, where the Court upheld a state statute that prohibited adult films from being shown in certain areas, *see* 475 U.S. 41, 43 (1986), to "prevent crime, protect the city's retail trade, maintain property values," and to secure "the quality of urban life, *id.* at 48 (cleaned up). While that law made clear, content-based distinctions, the Court concluded that it was "aimed not at the *content* of the films, … but rather at the *secondary effects*" of theatres showing those films in sensitive locations. *Id.* at 47.

13

SB544 falls squarely within that doctrine.  Even if it makes content-based distinctions, SB544 doesn't regulate the content that Entities put on their website.  Rather, it regulates the secondary effects of that content on minors by requiring Entities to employ reasonable methods to ensure that those accessing age-restricted content are of age.

To survive heightened scrutiny, SB544 need only promote a "substantial government interest," and not suppress substantially more speech than necessary to achieve Montana's objectives.  *Ward*, 491 U.S. at 799.  SB544 easily clears that bar.  Montana's interest in "protecting the physical and psychological well-being of minors" is compelling.  *Sable*, 492 U.S. at 126.  What's more, it's appropriately tailored.  SB544 doesn't cut off any avenues for the Entities to communicate their message, it just requires Entities to ensure that those accessing their content are adults and to protect the privacy of their customers by prohibiting them from storing customer data.  §1(1), (2).

**Strict Scrutiny.**  Even if strict scrutiny applies, SB544 is narrowly tailored to Montana's "compelling" interest in protecting minors from online pornography.  *Sable*, 492 U.S. at 126.  SB544 limits minors' access to online pornography, and it doesn't prohibit *any* speech.  It only

requires the Entities to check their customers' ages before providing access to age-restricted materials.

Nor can age-verification be replaced by less-restrictive regulation that will adequately advance Montana's interest. *See Meinecke v. City of Seattle*, 99 F.4th 514, 525 (9th Cir. 2024) ("If a less restrictive alternative would serve the Government's purpose, the Government must use that alternative." (citation omitted; cleaned up)). SB544 is aimed, not at websites with only an incidental amount of material harmful to minors, but at websites whose business model is driven by the publication and distribution of that material. *See* §1(1) (applies to "website that contains a *substantial portion* of the material"); §1(7)(i) (defines "substantial portion" as more than one-third of "total material on a website"). Age-verification is a familiar technology for many of these sophisticated entities offering age-restricted products.

## II.  **Plaintiffs fail to state a substantive due process claim.**

### A. **No plaintiff has standing to pursue relief under a substantive due process theory.**

Plaintiffs fail to plausibly allege standing for a substantive due process claim. Plaintiffs allege that SB544 "intrudes upon fundamental liberty and privacy rights." Compl. ¶4; *id.* ¶76 (SB544 "impinges upon

liberty and privacy interests in one's own private sexual conduct" (citing *Lawrence v. Texas*, 539 U.S. 558 (2003)); ¶93 ("it intrudes into the private sexual conduct and proclivities of adults, thus impairing a fundamental right"); ¶77 (online age-verification, unlike offline age-verification, intrudes on individual privacy because it creates risk that websites will retain individuals' digital "fingerprint[s]").

Standing isn't "dispensed in gross," so Plaintiffs must establish standing for each claim they seek to press and each form of relief they seek. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citation omitted). To plausibly allege standing, Plaintiffs must show "injury in fact," "causa[tion]," and a "likel'ihood]" that a favorable decision will redress their alleged injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The alleged "injury-in-fact must constitute an invasion of a legally protected interest." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022) (citation omitted). Plaintiffs "must clearly … allege facts demonstrating each element" of standing. *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (citation omitted).

For pre-enforcement injuries, Plaintiffs must allege (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that their "intended future conduct is 'arguably … proscribed by [the challenged] statute," and (3) that the threat of future enforcement is "substantial." *Peace Ranch*, 93 F.4th at 487 (citation omitted).

An organization can assert Article III standing "to sue on [its] own behalf for injuries [it] ha[s] sustained." *FDA v. All. for Hippocratic Med.*, 2024 LEXIS 2604, at *36 (U.S. June 13, 2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.9 (1982)). But it must still "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* Prior circuit precedent provided that an organization can establish direct standing when it shows "that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879 (9th Cir. 2022) (citation omitted). But *Hippocratic Medicine* closed that door. 2024 LEXIS 2604, at *37-38. Instead, FSC must show that SB544 "directly affect[s] and interfere[s] with [FSC]'s core business activities." *Id.* at *38.

17

No plaintiff—not the Individuals, Entities, or FSC—has standing to assert this claim.

Start with the Individuals.  For pre-enforcement standing, they must allege that they intend to engage in conduct that "is arguably … proscribed by" SB544. *Peace Ranch*, 93 F.4th at 487 (quotations omitted).  But SB544 imposes liability only on "*commercial entit*[*ies*]" that "knowingly and intentionally publish[] or distribut[e] material harmful to minors" without applying "reasonable age verification methods." §1(1).  And SB544 defines "[c]ommercial entity" to include "corporations, limited liability companies, partnerships, limited partnerships, sole proprietorships, or other legally recognized entities." §1(7)(a).  Notably absent from that list: individuals.  Two other portions of the statute confirm that this exclusion was no accident.  When defining "transactional data," SB544 refers to information transferred "between an individual, commercial entity, or third party," *see* §1(7)(j), confirming the distinction between an individual and a commercial entity.  SB544 similarly distinguishes between "a person" and an "entity" in its definition of "[p]ublish." *See* §1(7)(g).  SB544 *could* sweep in individuals operating as sole proprietors, but neither Pfeuffer, Peterson, nor Griswold allege that they operate as

sole proprietors.  Compl. ¶¶17-19; 23-25; 26-28.  Because SB544 doesn't "arguably proscribe" any future conduct in which the Individuals intend to engage, they lack standing to assert this claim.  *Peace Ranch*, 93 F.4th at 487.

Next, consider the Entities.  None of the Entities alleges an interest in private sexual conduct (nor could they), *see* Compl. ¶¶14-16 (DCT); ¶¶20-22 (JFF); ¶¶29-31 (PHE); ¶¶32-34 (Convergence), much less a "liberty" interest secured by the Fourteenth Amendment's Due Process Clause.  *See Dep't of State v. Muñoz*, 2024 LEXIS 2716, at *16 (U.S. June 21, 2024) (recognizing unenumerated rights requires "careful description of the asserted fundamental liberty interest" and a showing that the identified liberty interest is "objectively, deeply rooted in this Nation's history and tradition" (citation omitted)); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237-40 (2022) (same).  Because they fail to allege a legally cognizable "liberty" interest, *see Unified Data*, 39 F.4th at 1210, they too lack standing to assert this claim.

Finally, turn to FSC.  To start, FSC's allegations fail to show an injury under the scrapped "diversion of resources" test because it didn't allege that SB544 "frustrated its mission"—assisting creative artists in

the exercise of their First Amendment rights, *see* Compl. ¶12—or "caused it to divert resources in response to that frustration of purpose." *Sabra*, 44 F.4th at 879.  Because it alleges no facts *at all* about the effect of SB544 on its "core business activities," 2024 LEXIS 2604, at *38, FSC fares no better under the standard announced in *Hippocratic Medicine*. Construed generously, FSC alleges that SB544 has impaired its ability to serve its members and achieve its organizational mission to secure its members' First Amendment rights.  *See* Compl. ¶¶12-13.  But "that argument does not work to demonstrate standing."  *Hippocratic Med.*, 2024 LEXIS 2604, at *36; *Havens*, 455 U.S. at 379 (plaintiff must show "far more than simply a setback to the organization's abstract social interests").

## B. No plaintiff alleges a fundamental "liberty" interest.

Even if this Court finds that one of the Plaintiffs plausibly alleges standing, no plaintiff asserts a "liberty" interest secured by the Fourteenth Amendment's Due Process Clause.  Plaintiffs suggest that *Lawrence* secured a fundamental right to private sexual conduct.  *See* Compl. ¶93; *see id.* ¶76.  But *Lawrence* neither secured a fundamental right, *Lawrence*, 539 U.S. at 586 (Scalia, J., dissenting) ("[N]owhere does the

Court's opinion declare that homosexual sodomy is a 'fundamental right' under the Due Process Clause[.]"), nor did it secure a "liberty" interest in private sexual conduct, *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1172 (9th Cir. 2011) (per curiam) (O'Scannlain, J., concurring specially) ("Lawrence held that the liberty interest protected by the due process clause prohibits states from criminalizing private homosexual conduct by consenting adults.").  While *Lawrence* contained broad language on personal autonomy, *see* 539 U.S. at 562, it emphasized the limitations of the liberty interest guiding its decision, in part, by observing that "[t]he present case *does not involve minors*," *id.* at 578 (emphasis added).  But SB544 is mainly concerned with minors—that is, ensuring that minors do not access harmful age-restricted materials.  And it doesn't prevent adults from accessing these age-restricted materials; it just requires commercial entities to verify that the customers who wish to access these age-restricted materials are of age.

Because Plaintiffs fail both to allege standing or a protected "liberty" interest, this claim should be dismissed with prejudice.

## III. Plaintiffs fail to state a procedural due process claim.

Plaintiffs fail to plausibly allege that SB544 is impermissibly vague in violation of the procedural component of the Fourteenth Amendment's Due Process Clause.  Plaintiffs allege that these terms in SB544 fail to provide fair notice to a person of ordinary intelligence as to the conduct it prohibits: "taken as a whole," Compl. ¶60; "substantial portion," defined as "more than 33 1/3% of total material on a website," *id.* ¶61; "minor," *id.* ¶62; "commercial entity"[8]  and "website," *id.* ¶63; "any commercially reasonable method that relies on public or private transactional data," *id.* ¶64; "contemporary community standards," *id.* ¶65; and "know" or "intend," *id.* ¶66.

Laws regulating persons or entities "must give fair notice of the conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  A regulation violates due process if it "'fails to provide a person of ordinary intelligence fair notice of what is prohibited," or if it "is so standardless that it authorizes or encourages

---

[8] For the reasons discussed above, *see supra* Sect.II.A., the reach of the term "commercial entity" isn't vague at all.  It applies to the named entities and other "legally recognized entities."  §1(7)(a).  And it doesn't apply to individuals.

seriously discriminatory enforcement.'" *Id.* at 253 (quoting *Williams*, 553 U.S. at 304). Yet a statute provides sufficient notice if "it prohibits conduct according to an imprecise but comprehensible normative standard." *Robles v. Domino's Pizza, LLC*, 913 F.3d 896, 906 (9th Cir. 2019) (citation omitted).

None of the statutory terms Plaintiffs identify—considered in context—"fail[] to provide a person of ordinary intelligence fair notice of what is prohibited." *Fox*, 567 U.S. at 253. But Plaintiffs demand of SB544 what the Supreme Court has refused to require: "mathematical certainty [in its terms]," s*ee Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). The Court hasn't even required this of "regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (citation omitted). What's more, because SB544 regulates commercial conduct, it's "reviewed under a less stringent standard of specificity" than criminal laws or laws burdening First Amendment rights. *Id.* (citation omitted).

Consider "substantial portion"—one of the terms Plaintiffs allege is impermissibly vague. Compl. ¶61. SB544 defines this as more than one-third of the material on a website. §1(7)(i). But there's no doubt about what this provision encompasses: material harmful to minors contained

on a website.  There may be some difficulty in specific cases determining whether material on a specific website clears the statutory one-third threshold to qualify as a "substantial portion," but that isn't a vagueness problem.  SB544 is vague only if there is "indeterminacy [as to] precisely what th[e] fact [that must be established] is."  *Williams*, 553 U.S. at 306. In the "vast majority of [SB544's] intended applications," *see Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citation omitted), it will be obvious whether the material on a particular website clears SB544's one-third threshold.

This same deficiency permeates the remaining terms Plaintiffs allege are impermissibly vague.  Start with "taken as a whole," *see* Compl. ¶60, and "contemporary community standards," *id.* ¶65, two terms that comprise part of *Miller*'s 51-year-old definition for obscenity, *see* 413 U.S. 15, 24.  Even if there is some uncertainty about what comprises the "whole" when evaluating what content harms minors, or about how to define the "community" when evaluating contemporary community standards, these terms have been evaluated in federal cases for more than a half-century.  So in the "vast majority of its intended applications,"

24

*Hill*, 530 U.S. at 733, SB544's application will be clear.  And closer cases are tailormade for as-applied challenges.  *Hansen*, 599 U.S. at 785.

Turn to the remaining provisions Plaintiffs identify—"minor," *see* Compl. ¶62; "website," *id.* ¶63; "any commercially reasonable method that relies on public or private transactional data," *id.* ¶64; and "know" or "intend," *id.* ¶66.  Rather than address whether these terms are impermissibly vague in the "vast majority of [SB544]'s intended applications," *Hill*, 530 U.S. at 733, Plaintiffs "speculat[e] about possible vagueness in hypothetical situations not before the Court," *id.*; *see* Compl. ¶¶62-64, 66 (speculating about hypothetical issues arising from the terms "minor," "website," "commercially reasonable," and "know" or "intend," without identifying vagueness issues *in this case*).  Because the "mathematical certainty" Plaintiffs demand isn't required, s*ee Grayned*, 408 U.S. at 110, this Court should dismiss their facial procedural due process claim.

## IV. Plaintiffs fail to show standing for an equal protection claim.

Plaintiffs fail to plausibly allege standing for an equal protection claim.  To start, Plaintiffs allege that SB544's so-called "new-gathering organizations" exemption "draws impermissible content-based

distinctions among persons engaged in free speech, violating the Equal Protection Clause."  Compl. ¶ 4; *id.* ¶ 74 (SB544 "makes impermissible distinctions among media providers—exempting any employee of chosen media while offering no such protection to independent (non-employee) 'news gatherers,' or to bloggers, vloggers (video bloggers), or podcasters").

But as discussed above, standing isn't "dispensed in gross," so Plaintiffs must also establish standing for their equal protection claim. *Town of Chester*, 581 U.S. at 439.  Among other things, that requires Plaintiffs to allege an "injury in fact," *Lujan*, 504 U.S. at 560, that "constitutes an invasion of a legally protected interest," *Unified Data*, 39 F.4th at 1210.  Without a cognizable legal interest, dismissal is proper. *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022).  Because Plaintiffs raise a pre-enforcement challenge, they must also show that their future conduct is "arguably … proscribed by [SB544]."  *Peace Ranch*, 93 F.4th at 487.  Finally, an organization like FSC can "sue on [its] own behalf for injuries [it] ha[s] sustained," *Hippocratic Med.*, 2024 LEXIS 2604, at *36, but it must show that SB544 "directly affect[s] and interfere[s] with [its] core business activities," *id.* at *38.

Neither the Individuals, Entities, nor FSC has standing to assert an equal protection claim.

Start with the Individuals and FSC—both lack standing here for the same reasons they lack standing for the substantive due process claim. *See supra* Sect.II.A. Because SB544 imposes liability only on commercial entities and not individuals, it doesn't "arguably proscribe" any future conduct in which the Individuals intend to engage, so they lack standing to assert this claim. *Peace Ranch*, 93 F.4th at 487. And because FSC fails to allege an injury-in-fact under the scrapped "diversion of resources" test and *Hippocratic Medicine*'s "direct interference with core business activities" test, *see supra* Sect.II.A, it too lacks standing.

Turn to the Entities—DCT, JFF, PFE, and Convergence. None allege an injury in fact. To allege an equal protection injury, Plaintiffs must plausibly show that a similarly situated class has been treated disparately. *Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007). But the class that the Entities identify— individual news gatherers, bloggers, and vloggers—isn't similarly situated. To start, SB544 imposes liability only on commercial entities, not on individuals, *see supra* Sect.II.A, so the class that the Entities identify isn't subject to

27

liability under SB544, even without considering the "news-gathering organizations" exemption.  §1(4).

Turning to the exemption, it applies only to employees of certain media providers, not to any commercial entity.  *See id.*  For example, the exemption provides that "[t]his section … may not be construed to affect the rights of any news-gathering organizations," §1(4), which is defined as employees of print, online, or mobile "newspapers, news publications, or news sources," or "radio broadcast stations, television broadcast stations, cable operators, or wire services," §1(7)(f)(i)-(ii).  The exemption provides only that SB544 "may not be construed to affect th[ose employees'] rights," but it doesn't exempt them from any age-verification obligations SB544 may impose.  On these facts, the "news-gathering organizations" exemption doesn't make the "impermissible distinctions among media providers" that Plaintiffs allege.  Compl. ¶74.

Without a legally cognizable injury-in-fact, this Court should dismiss Plaintiffs' equal protection claim.  *Tingley*, 47 F.4th at 1066.

## V.  Plaintiffs fail to state a Commerce Clause claim.

Plaintiffs allege that SB544 "significantly burdens interstate commerce by restricting the ability of [out-of-state online content]

28

providers … to communicate with Montana residents," Compl. ¶5; *id.* ¶78 ("out-of-state content-providers"), and it imposes burdens that fall on non-Montana residents in border towns, *id.* ¶79.  They also allege that SB544 "constitutes an unreasonable and undue burden on the instrumentalities of interstate and foreign commerce." *Id.* ¶97.  Plaintiffs argue that the "unimpeded interstate exchange of protected material clearly outweighs … Montana's … interests in requiring age verification to protect minors from viewing certain adult content online." *Id.* ¶80.

Plaintiffs seem to take two distinct views on the essence of the commerce.  First, they suggest that the problem is an access issue—*i.e.*, the websites are commodities.  *Id.* ¶79 (SB544 imposes access-related burdens on non-Montana residents in border towns).  Second, they suggest that the issue is the burden on interstate "communication … between out-of-state content-providers and Montanans." *Id.* ¶78.  That is, the websites are instrumentalities to transport protected expression.  *Id.* Neither view can be squared with the law.

The Commerce Clause implicitly limits the states' authority to legislate about interstate commerce.  *S. Pac. Co. v. Arizona*, 325 U.S. 761, 769 (1945).  If SB544 "directly regulates" interstate commerce or "favor[s]

in-state economic interests over out-of-state interests," it likely violates the Commerce Clause. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986).   But if SB544 "regulates even-handedly" and has an "*indirect* effect[t]" on interstate commerce, courts balance the state's legitimate interests against the burden imposed. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).   SB544 regulates only intrastate activity—it requires commercial entities to employ reasonable methods to verify the ages of their Montana customers. *See* §1(1).   The only question, then, is whether it has an indirect effect on interstate commerce that outweighs Montana's interests in protecting minors from online pornography.

If Plaintiffs are making an extraterritorial-effects argument, *see* Compl. ¶79 (access burdens on border-town residents), the facts here conflict with cases invalidating state laws on this ground.   *See Brown-Forman*, 476 U.S. at 579.   This Circuit has limited the extraterritoriality principle to statutes that dictate the price of products and tie in-state prices to out-of-state prices. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 951 (9th Cir. 2013).   State laws that

regulate only intrastate conduct don't have impermissible extraterritorial effects. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 358 (2023).

To establish an undue burden, Plaintiffs must "plead facts 'plausibly' suggesting" that SB544 imposes "a substantial harm to interstate commerce" that is "clearly excessive in relation to the putative local benefits." *Pork Producers*, 598 U.S. at 377, 385; *Pike*, 397 U.S. at 142.

Plaintiffs fail to allege a "substantial harm" to interstate commerce that exceeds the local benefits from reducing minors' access to online pornography.  To be sure, compliance with SB544 will impose costs on covered commercial entities.  Compl. ¶¶79-80.  But these costs will fall on in- *and* out-of-state content providers, so SB544 doesn't depart from the "antidiscrimination rule that lies at the core of [the Supreme Court's] dormant Commerce Clause jurisprudence" just because it requires covered entities to verify that customers may access their age-restricted services. *Pork Producers*, 598 U.S. at 377.  Nor can Plaintiffs show that their purported interest in the "unimpeded exchange of constitutionally-protected material" clearly outweighs Montana's interest in protecting minors from online pornography.  Compl. ¶80.  Indeed, the Montana

legislature found that early exposure to pornography "contributes to the hypersexualization of teens," to "body-image disorders," "problematic sexual behaviors," reduced "brain functioning and development," "emotional and medical illnesses," and "difficulty forming or maintaining positive, intimate relationships." SB544, Preamble.

Because Plaintiffs fail to allege that SB544 imposes a substantial burden on interstate commerce that clearly exceeds its local benefits, this Court should dismiss their Commerce Clause claim.

## VI.  Plaintiff JFF's Section 230 claim fails.

JFF alleges that "by treating website operators of material hosted on their websites but produced by other content providers," SB544 "conflict[s] with 47 U.S.C. §230" and is preempted by federal law. Compl. ¶6; *id.* ¶¶81-83.  Not so.  To start, §230(c) neither immunizes website operators from state-law obligations that don't require monitoring or deletion of third-party content, nor does it authorize website operators to publish their own content.  Congress enacted §230(c) to shield against liability for removal, but not publication or distribution, of "offensive material." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc).  Section 230(c)(2)'s text makes that clear: both

32

subsections—(c)(2)(A) and (B)—shield "providers" of "interactive computer service[s]" from liability for attempts to "restrict" unwanted material.

To be sure, §230(c)(1) lacks that same one-way language,[9] but it doesn't protect Plaintiffs for two reasons.  First, §230's "context clarifies (c)(1)'s open-ended language." *Paxton*, 95 F.4th at 285 (noting that (c)(1) abrogated a state trial court holding imposing liability on an online service provider that filtered out some profane content on a website for the content that remained).  As *Paxton* explains (c)(1) wasn't intended for use as "a shield for purposefully putting 'offensive material' onto the Internet." *Id.*; *see Roommates.com*, 521 F.3d at 1164 (Section 230 "was not meant to create a lawless no-man's land on the Internet.").

Second, imposing liability on JFF under SB544 wouldn't treat it as a "publisher or speaker" of the underlying content it hosts. *See* §230(c)(1).  Section 230(c) protects JFF from liability stemming from good-faith efforts to restrict content that it hosts, not from liability for content it publishes or disseminates.  So (c)(1) instructs courts not to treat companies

---

[9] It states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. §230(c)(1).

like JFF as publishers of third-party content that it hosts, and (c)(2) provides that they don't become publishers just because they try to filter out harmful content.  If JFF doesn't create content and serves only as a passive conduit, (c)(1) protects it from liability for third-party content.  If it creates content, nothing in §230(c) protects it from liability.  §230(f)(3). At bottom, §230(c) limits JFF's liability in two targeted ways, neither of which has anything to do with SB544's condition that it employ reasonable age-verification measures.

SB544, however, only imposes liability on JFF based on whether it complies with SB544's age-verification procedures.  If it complies and a minor evades the age-verification procedures and is later harmed by third-party content or other content on JFF's site, §230(c)'s protections kick in and bar liability.  Because there is no conflict between §230(c) and SB544, this Court should dismiss JFF's Supremacy Clause claim.

## CONCLUSION

This Court should grant Defendant's Motion to Dismiss in full.

DATED this 24th day of June, 2024.

> AUSTIN KNUDSEN
>   *Montana Attorney General*
>
> CHRISTIAN B. CORRIGAN
>   *Solicitor General*
>
> */s/ Peter M. Torstensen, Jr.*
> PETER M. TORSTENSEN, JR.
>   *Deputy Solicitor General*
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
> christian.corrigan@mt.gov
> peter.torstensen@mt.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 6,496 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ *Peter M. Torstensen, Jr.*
PETER M. TORSTENSEN, JR.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: June 24, 2024     /s/ *Peter M. Torstensen, Jr.*
PETER M. TORSTENSEN, JR.