Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
201 West Main St., Suite 300
P.O. Box 9199
Missoula, MT 59807
Telephone: (406) 543-6646
Facsimile: (406) 549-6804
npjones@boonekarlberg.com
tleonard@boonekarlberg.com

Jeffrey Keith Sandman
WEBB DANIEL FREIDLANDER
LLP
5208 Magazine St., Ste 364
New Orleans, LA 70115
Telephone: (978) 886-0639
jeff.sandman@webbdaniel.law

D. Gill Sperlein
THE LAW OFFICE OF D. GILL
SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
gill@sperleinlaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC.; DEEP CONNECTION TECHNOLOGIES, INC.; CHARYN PFEUFFER; JFF PUBLICATIONS, LLC; ANNA LOUISE PETERSON; LYNSEY GRISWOLD ; PHE, INC.; AND CONVERGENCE HOLDINGS, INC., | Case No. 9:24-cv-00067-DWM |
| *Plaintiffs,* | **PLAINTIFFS' PRELIMINARY PRETRIAL STATEMENT** |
| v. | |
| AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana | |
| *Defendant.* | |

Pursuant to L.R. 16.2(b)(1), Plaintiffs provide the following Preliminary Pretrial Statement:

## A. Factual Outline of the Case

In May 2023, the Montana legislature enacted, and Governor Greg Gianforte signed into law, Senate Bill 544 (hereafter, "the Act," codified at Mont. Code § 30-14-159). With an effective date of January 1, 2024, the Act subjects to liability any "commercial entity that knowingly and intentionally publishes or distributes material harmful to minors on the internet from a website that contains a substantial portion of such material" where "the entity fails to perform reasonable age verification methods to verify the age of individuals attempting to access the material." That liability is owed to "an individual for damages resulting from a minor accessing the material, including court costs and reasonable attorney fees as ordered by the court."

This is a constitutional challenge to that statute. Pursuant to 18 U.S.C. § 2201 and 2202, and 42 U.S.C. § 1983 and 1988, Plaintiffs seek declaratory and injunctive relief to vindicate rights secured by the United States Constitution.

In particular, the Act violates the First Amendment in several respects. First, it imposes a content-based burden on protected speech that requires narrow tailoring and use of the least restrictive means to serve a compelling state interest, yet it captures a substantial quantity of protected speech without accomplishing its stated purpose of protecting minors from materials they may easily obtain from other sources and via other means. Second, compelling providers of online content to place an age-verification content wall over their entire websites unconstitutionally labels them as "adult businesses," with all the negative implications and ramifications that follow. And third, by requiring the use of some particularized approval method as a condition to providing protected expression, the Act operates as a presumptively-unconstitutional prior restraint on speech.

Additionally, by treating website operators (like Plaintiff JFF) as the publishers of material hosted on their websites but produced by other content providers, the Act stands in direct conflict with 47 U.S.C. § 230 ("Section 230") and is therefore preempted by that supreme federal law.

## B. Basis for Federal Jurisdiction and Venue

This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). It seeks remedies under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, and Fed. R. Civ. P. 65.

Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred here and because the only Defendant, the Montana Attorney General, resides in this district. Divisional venue in the Missoula Division is proper under Local Rules 1.2(c) and 3.2(b), and Mont. Code Ann. §§ 25-2-125, 25-2-126(1), and 25-2-118 because Plaintiffs estimate that the Missoula Division has a high concentration of internet users compared to other divisions within the District of Montana.

## C. Factual Basis for of Each Claim[1]

I. The Age Verification Act

In May 2023, the Montana legislature enacted, and Governor Greg Gianforte signed into law, Senate Bill 544. *See* Mont. Code. § 30–14–159.

---

[1] The following factual background is drawn substantially (and nearly verbatim) from this Court's Opinion and Order partially denying Defendant's motion to dismiss. *See* Dkt. No. 22.

With an effective date of January 1, 2024, the Act provides in relevant part:

> (1) A commercial entity that knowingly and intentionally publishes or distributes material harmful to minors on the internet from a website that contains a substantial portion of the material must be held liable if the entity fails to perform reasonable age verification methods to verify the age of individuals attempting to access the material.
>
> (2) A commercial entity or third party that performs the required age verification may not retain any identifying information of the individual after access has been granted to the material.
>
> (3)(a) A commercial entity that is found to have violated this section is liable to an individual for damages resulting from a minor accessing the material, including court costs and reasonable attorney fees as ordered by the court.
>
> (b) A commercial entity that is found to have knowingly retained identifying information of the individual after access has been granted to the individual must be liable to the individual for damages resulting from retaining the identifying information, including court costs and reasonable attorney fees as ordered by the court.
>
> (4) This section does not apply to any bona fide news or public interest broadcast, website video, report, or event and may not be construed to affect the rights of any news-gathering organizations.
>
> (5) An internet service provider or its affiliates or subsidiaries, a search engine, or a cloud service provider may not be held to have violated the provisions of this section solely for providing access or connection to or from a website or other information or content on the internet or a facility, system, or network not under that provider's control, including

transmission, downloading, intermediate storage, access software, or other forms of access or storage to the extent the provider is not responsible for the creation of the content of the communication that constitutes material harmful to minors.

(6) The department shall provide an annual report of enforcement actions taken under this section. The department shall provide an internet version of the report free of charge to the public and shall charge a fee for paper copies that is commensurate with the cost of printing the report.

*Id.* The statute defines "minor" as someone under 18 years of age and

"material harmful to minors" as:

(i) any material that the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest;

(ii) any of the following material that exploits, is devoted to, or principally consists of descriptions of actual, simulated, or animated display or depiction of any of the following, in a manner patently offensive with respect to minors:

(A) pubic hair, anus, vulva, genitals, or nipple of the female breast;

(B) touching, caressing, or fondling of nipples, breasts, buttocks, anuses, or genitals; or

(C) sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, excretory functions, exhibitions, or any other sexual act; and

(iii) the material taken as a whole lacks serious literary, artistic, political, or scientific value for minors.

7

*Id.* § 30–14–159(7)(d), (e). The statute defines "substantial portion" as "more than 33 1/3 % of total material on a website." *Id.* § 30–14–159(7)(i).

## II. Plaintiffs

Plaintiffs are a coalition of businesses, individuals, and a trade association that are involved directly or indirectly with providing online content to Montana residents.

*A. Businesses*

### 1. Deep Connection Technologies, Inc.

Deep Connection Technologies, Inc. ("Deep") is a Delaware corporation that operates "O.school," "a judgment-free online educational platform focused on sexual wellness." (Doc. 1 at ¶ 14.) "O.school's mission is to help people worldwide improve their sexual health, power, and confidence" and, as part of that mission, "provides critical sex education" to minors. (*Id.* ¶¶ 14, 15.) Deep "opposes any age-verification measure that would preclude ... teens from accessing O.school's content" and "is confused as to what constitutes 'reasonable age verification methods' under the Act[ ] and concerned about the prohibitive cost of providing complying age verification protocols." (*Id.* ¶ 15.)

### 2. JFF Publications, LLC

8

JFF Publications, LLC ("JFF") is a Delaware limited liability company that "operates an internet-based platform at the domain <JusfFor.Fans> that allows independent producers/performers of erotic audiovisual works to publish their content and provide access to fans on a subscription basis." (*Id.* ¶ 20.) Functionally, "[e]ach producer/performer operates and maintains an individual JustFor.Fans channel, which may contain photographs or videos and permits the exchange of messages between producers/performers and fans." (*Id.*) "JFF is confused about what constitutes a 'website' (whether each performer channel, the JustFor.Fans platform, or even other platforms operated by JFF), confused as to what constitutes 'reasonable age verification methods' under the Act and how a 'substantial portion' of a 'website's' content is to be measured, and concerned about the prohibitive cost of providing complying age verification protocols." (*Id.* ¶ 21.)

3. PHE, Inc.

PHE, Inc. ("PHE") is a North Carolina corporation doing business as "Adam and Eve," "an award-winning sexual wellness retailer that owns and operates various online stores and franchises brick and mortar stores bearing its well-respected trademark." (*Id.* ¶ 29.) "Through its

online store at adameve.com, PHE markets, processes payments for, and fulfills orders for adult toys, lingerie, soaps, lubricants, candles, bath items, novelty items, and adult games. PHE also publishes education articles related to sexual health and wellness on adameve.com, sells adult videos from a second web domain devoted exclusively to DVD sales ..., streams erotic movies on a third [website] ..., and promotes its brick-and-mortar franchise stores via a fourth site ... that provides a separate subdomain for each of its franchised stores to offer store-specific information." (*Id.*) "Each of the[se] websites ... contains some material that might qualify as 'material harmful to minors' under the Act, but PHE cannot determine which (if any) are out of compliance because it does not know, for example, what constitutes 'the material as a whole' or how it should measure the 33 1/3% threshold under which its 'harmful to minors' offerings must remain vis-à-vis its other offerings." (*Id.* ¶ 30.)

4. Convergence Holdings, Inc.

Convergence Holdings, Inc. ("Convergence") is a Montana corporation doing business as Adam and Eve Montana. (*Id.* ¶ 32.) Convergence owns and operates five franchise stores located in Three Forks, Helena, Great Falls, Missoula, and Billings. (*Id.*) These stores use the

10

subdomains operated by PHE to provide store and sales information. (*Id.*) Although Convergence recognizes that it would not be subject to an enforcement action as it does not own or operate the subdomains for its franchise stores, it maintains that a pre-enforcement challenge is the only means by which it can vindicate its constitutional rights. (See *id.* ¶ 33.)

*B. Individuals*

1. Charyn Pfeuffer

Charyn Pfeuffer lives in Seattle, Washington, and writes professionally about sex and relationships. (*Id.* ¶ 17.) "She archives her written work in an online portfolio and shares it via her social medica platforms." (*Id.*) Pfeuffer is unsure whether her portfolio or her webcam channel "would be considered a 'website,' whether she would qualify as a 'commercial entity' responsible for performing her own age-verification checks, and how she is to determine whether a 'substantial portion' of her writing constitutes 'material harmful [to] minors.' " (*Id.* ¶ 18.)

2. Anna Louise Peterson

Anna Louise Peterson, Ed. D., LCPC is a psychotherapist who lives and operates a private practice in Missoula, Montana. (*Id.* ¶ 23.) She has

served as an adjunct professor in the Counselor Education program at the University of Montana and in the Department of Social Work at Walla Walla College. (*Id.*) "In connection with her professional work, Dr. Peterson relies on internet research on transgender issues and sexuality." (*Id.* ¶ 24.) "She fears that, as websites block access to internet users in Montana to avoid running afoul of the Act, she will see a substantial reduction in the availability of online materials that she depends on." (*Id.*) Peterson "is also concerned about her own privacy and objects to providing her identity to access websites that have instituted age verification protocols to comply with the Act." (*Id.*)

3. Lynsey Griswold

Lynsey Griswold, known professionally as "Lynsey G," "is a writer, editor, and publisher who concentrates on the intersection of pornography, feminism, and sexuality." (*Id.* ¶ 26.) She is the cofounder of Oneshi Press, which is "an independent publishing company based in Missoula, Montana[,] that produces richly illustrated fantasy and sci-fi graphic novels, comics, and art books—including her own graphic novel, Tracy Queen, about an adult film star." (*Id.*) "As a consumer of adult content, Griswold cannot now access numerous adult websites that no longer

grant access to Montana consumers to avoid running afoul of the Act." She is also fearful of the impact the Act will have on her privacy and "her ability to sell her graphic novel online." (*Id.* ¶ 27.)

*C. Trade Association – Free Speech Coalition, Inc.*

Free Speech Coalition, Inc. ("Free Speech") is a California trade association that was founded in 1991. (*Id.* ¶ 12.) It "assists film makers, producers, distributors, wholesalers, retailers, internet providers, performers, and other creative artists located throughout North America in the exercise of their First Amendment rights and in the vigorous defense of those rights against censorship." (*Id.*) It "currently represents hundreds of businesses and individuals involved in the production, distribution, sale, and presentation of constitutionally-protected and non-obscene materials that are disseminated to consenting adults via the internet." (*Id.*) "Most of that material would fit within Montana's statutory definition of 'material harmful to minors.' " (*Id.*) Free Speech "sues on its own behalf and on behalf of its members to vindicate its own constitutional rights, its members' constitutional rights, and those of the members' respective owners, officers, employees, and current and prospective readers, viewers, and customers." (*Id.* ¶ 13.)

## III. The Present Case

On May 14, 2024, Plaintiffs sued the State, alleging that Montana's Age Verification Act violates their free speech rights under the First and Fourteenth Amendments (Count 1), their rights to due process and equal protection under the Fourteenth Amendment (Count 2), the Commerce Clause (Count 3), and the Supremacy Clause (Count 4). (Doc. 1.) Plaintiffs seek a declaratory judgment (Count 5) and permanent injunctive relief.

The State moved to dismiss Plaintiffs' claims, which this court granted only with respect to Plaintiffs' Commerce Clause claim (Count 3). *See* Dkt. No. 22. To expedite the process of securing a judgment on Plaintiffs' foundational claims (their facial First Amendment challenge and JFF's Section 230 preemption claim), Plaintiffs are now prepared to voluntarily dismiss their Due Process and Equal Protection claims (Count 2) and their *as-applied* First Amendment challenge (part of Count 1), as well.

### D. Legal Theory Underlying Each Claim

## I. First Amendment

This Court has already held that, as a content-based restriction on speech burdening the First Amendment rights of *adults*, the Act is subject to strict scrutiny. *See* Dkt. No. 22 at 14-20.

To satisfy that standard of proof, the Act "'must be narrowly tailored to promote a compelling State interest.'" Dkt. No. 22 at 20 (quoting *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 813 (2000)). But while the State may serve its interest in protecting minors from content obscene *as to them*], "'it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.'" *Id.* (quoting *Sable Comms. of Cal. v. Fed. Comms. Cmm'n*, 492 U.S. 115, 126 (1989). "'It is not enough to show that the State's ends are compelling; the means must be carefully tailored to achieve those ends.'" *Id.* (quoting *Sable,* 492 U.S. at 126). "'If a less restrictive alternative would serve the State's purpose, the legislature must use that alternative.'" *Id.* at 21 (quoting *Playboy*, 529 U.S. at 813). And it is *the State* that "carries the burden to show both that the means employed by the statute are the least-restrictive available and that the statute actually serves the interest identified." *Id.* (citing *Ashcroft v. ACLU,*

542 U.S. 656, 670 (2004)). (All quotations in paragraph cleaned up to remove brackets.)

Although Plaintiffs have conceded that the State has a compelling interest in protecting minors from adult sexual content online, they have alleged—and discovery will demonstrate—that the Act is neither narrowly tailored nor the least restrictive means of pursuing that interest:

> Plaintiffs allege that filtering programs or device-level restrictions may provide a viable, less-restrictive alternative. (See Doc. 1 at ¶ 51.) They further allege that the Act is under-inclusive insofar as it does not cover search engines or social media platforms, both of which Plaintiffs allege are "places children are most likely to encounter pornography in the first place." (Doc. 19 at 18; Doc. 1 at ¶ 48.) Plaintiffs also allege that the Act fails to consider the use of VPN programs that can easily be used to evade state-level restrictions or the use of the dark web. (See Doc. 1 at ¶¶ 44, 49.)

Dkt. No. 22 at 21-22. And because discovery will reveal that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," Plaintiffs expect to prevail on their facial challenge. *See* Dkt. No. 22 at 21 (quoting *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397–98 (2024)).

## II. Section 230 Preemption

This Court addressed the legal underpinnings of Plaintiff JFF's Section 230 claims in its Order on Defendant's motion to dismiss:

Under the Supremacy Clause of the United States Constitution, courts are required to treat "the Laws of the United States" as "the supreme Law of the Land." U.S. Const. Art. VI, cl. 2; *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). In light of the "rapidly developing array of Internet and other interactive computer services available to individual Americans," Congress passed the Communications Decency Act of 1996, which sought to prevent interactive computer services, *i.e.*, websites and platform hosts, from being liable for harmful or offensive conduct posted by third parties on their sites. 47 U.S.C. § 230(a)(1). To wit, Section 230, as the statute is known, states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). Section 230 further states that while "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section[, n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).

Dkt. No. 22 at 37-38. Indeed, "the fundamental purpose of § 230 is to immunize interactive computer services, like JFF, from liability associated with content *they failed to censor*." *Id.* at 38-39. As Section 230 was enacted to "'to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material,'" Section 230 "allows interactive computer service providers 'to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete.'" *Id.* at 39 (quoting *Barnes v. Yahoo!, Inc.*, 570

17

F.3d 1096, 1099–100 (9th Cir. 2009); *Fair Housing Council v. Room-mates.com, LLC*, where 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc)). Plaintiffs thus expect to prevail on their Section 230 preemption challenge.

## E. Computation of Damages

Plaintiffs are not pursuing monetary damages but are pursuing reasonable costs and attorneys' and other fees pursuant to 42 U.S.C. § 1988.

## F. Pendency or Disposition of Any Related State or Federal Litigation

There are no related cases challenging SB544 within any Montana state or federal court.

## G. Proposed Additional Stipulations of Fact and Plaintiffs' Understanding of What Law Applies

Plaintiffs propose no additional stipulations of fact beyond those included in the Statement of Stipulated Facts pursuant to L.R. 16.2(b)(3). Federal law governs Plaintiffs' claims, all of which arise under the U.S. Constitution and federal law.

## H. Proposed Deadlines Relating to Joinder of Parties or Amendment of the Pleadings

Plaintiffs do not anticipate joining additional parties or amending their pleading. They propose a deadline for doing so of January 31, 2025.

## I. Identification of Controlling Issues of Law Suitable for Pretrial Disposition

In its order addressing Defendant's motion to dismiss, this Court determined that strict scrutiny applies to Plaintiff's First Amendment claim.

Plaintiffs believe that their First Amendment and Section 230 Preemption claims are suitable for pretrial disposition in the form of a summary judgment and anticipate filing a motion for summary judgment granting the declaratory and injunctive relief sought.

## J. Individuals Believed to Have Relevant Information

As Plaintiffs are asserting only a *facial* challenge under the First Amendment (in addition to JFF's Section 230 preemption claim), it is their position that most of the individuals identified below do not, in fact, have "information that may be used in proving or denying any party's claims or defenses." Nevertheless, in an abundance of caution, Plaintiffs identify the following individuals, each of whom is reachable through Plaintiffs' Counsel. Additional witnesses identified in discovery, that are

disclosed by Defendant, or that are necessary for foundation, rebuttal, or impeachment, may also have relevant information.

1. Alison Boden (Executive Director of Plaintiff Free Speech Coalition) has information about: costs and effectiveness of age verification, reduced web traffic resulting from age verification; costs and effectiveness of content-filtering; and the adult industry's efforts to cooperate with content-filtering companies to render their technologies most effective.

2. Andrea Barrica (Founder and CEO of O.School, which is owned and operated by Plaintiff Deep Connection Technologies Inc.) has information about: visitors to the O.school platform; the importance of frank sexual discussion for some older minors; and the cost and impact of age verification requirements on the O.school Platform.

3. Charyn Pfeuffer (Plaintiff) has information about: the broad spectrum of clients who engage her for video sex work; their reasons for engaging her; and the confusion over and chill imposed by the Act.

4. Anna Louise Peterson, Ed.D., LCPC (Plaintiff) has information about: the importance of access to materials bearing on issues of human sexuality (including those deemed "harmful to minors" by the Act); and difficulties treating her clients when online sexual content is restricted.

5. Lynsey Griswold (Plaintiff) has information about: her diminished ability to research issues of human sexuality because of the chill imposed by the Act.

6. Dominic Ford (Sole Member-Manager of JFF Publications, LLC) has information about: the costs and effectiveness of age verification; reduced web traffic resulting from age verification; operation of the JustFor.Fans platform as an interactive computer service that hosts the content of other creators.

7. Chad Davis (Director of Customer Acquisitions for PHE, Inc.) has information about: costs and effectiveness of age verification; reduced web traffic resulting from age verification; and the adult industry's efforts to cooperate with content-filtering companies to render their technologies most effective.

8. David Hanson (CEO of Convergence Holdings, Inc.) has information about: the impact the Act has had on franchise revenue; and the confusion over and chill imposed by the Act.

**K. Insurance Agreement(s) that May Cover any Judgment**

Plaintiffs are not pursuing monetary damages and know of no insurance agreements that might be implicated by a judgment, including by a grant of reasonable costs and attorneys fees.

## L. Status of Settlement Discussions and Prospects for Compromise of the Case

The parties have been working amicably to streamline discovery. As SB544 is a legislative enactment, however, settlement of all claims is unlikely.

## M. Suitability of Special Procedures

Plaintiffs have not identified special procedures that might be appropriate in this case.

DATED this 16th day of July, 2025.

/s/ Natasha Prinzing Jones
Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
201 West Main St., Suite 300
P.O. Box 9199
Missoula, MT 59807
Telephone: (406) 543-6646
Facsimile: (406) 549-6804
npjones@boonekarlberg.com
tleonard@boonekarlberg.com


/s/ Jeffrey Keith Sandman
Jeffrey Keith Sandman
WEBB DANIEL FREIDLANDER LLP
5208 Magazine St., Ste 364
New Orleans, LA 70115
Telephone: (978) 886-0639
jeff.sandman@webbdaniel.law


/s/ D. Gill Sperlein
D. Gill Sperlein
THE LAW OFFICE OF D. GILL
SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
gill@sperleinlaw.com

Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated: July 16th, 2025

*/s/ Jeffrey Sandman*
JEFFREY SANDMAN
