IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| FREE SPEECH COALITION, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>AUSTIN KNUDSEN, in his official capacity as the Attorney General of the State of Montana,<br><br>    Defendant. | CV 24-67-M-DWM<br><br>ORDER |

In 2023, Montana enacted a law that requires "[a] commercial entity that knowingly and intentionally publishes or distributes material harmful to minors on the internet . . . to perform reasonable age verification methods to verify the age of individuals attempting to access the material." S.B. 544 (Mont. 2023) (codified at Mont. Code Ann. § 30–14–159) ("Age Verification Act" or the "Act"). If an entity fails to do so, it is liable for civil "damages resulting from a minor accessing the material, including court costs and reasonable attorney fees." *Id.* In 2024, Plaintiffs—a coalition of private companies, individuals, and a nonprofit trade association—sued, arguing the Act violated the First and Fourteenth Amendments, violated the Commerce Clause, and is preempted by federal statute, *see* 47 U.S.C §

1

230. (Doc. 1.) Following a motion to dismiss filed by Defendant Austin Knudsen, Attorney General of the State of Montana (the "State"), Plaintiffs' Commerce Clause claim was dismissed. (*See* Docs. 22, 34.)

During its 2025 session, the Montana Legislature amended the Age Verification Act to remove the Attorney General's authority to initiate enforcement actions. (*See* Doc. 39-2 (S.B. 488 (Mont. 2025)).) On May 9, 2025, Plaintiffs filed a First Amended Complaint, alleging that "[e]ven though the Attorney General is precluded from pursing an enforcement action directly under the Law itself, he nevertheless bears 'some connection with enforcement' of that Law." (Doc. 37 at ¶¶ 34–39 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).) The State again moved to dismiss, arguing that Plaintiffs' claims are barred by sovereign immunity and that Plaintiffs lack standing. (Docs. 38, 39.) That motion is granted.

## ANALYSIS

The State seeks to dismiss Plaintiffs' claims based on sovereign immunity and a lack of standing. The State's second argument has merit.

### I.  Sovereign Immunity

The State first argues that Plaintiffs' claims are barred by the sovereign immunity recognized in the Eleventh Amendment. State officials sued in their official capacity are generally "immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v.*

2

*Jackson*, 595 U.S. 30, 39 (2021). "Rule 12(b)(1) [of the Federal Rules of Civil Procedure] is . . . a proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (footnote omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (internal quotation marks omitted). "No presumption of truthfulness attaches to plaintiff's allegations." *Id.* (internal quotation marks and alteration omitted).

Here, Plaintiffs argue that their suit falls within a narrow exception to the doctrine of sovereign immunity.[1] "[T]he Supreme Court recognized in *Ex parte Young*, 209 U.S. 123 (1908), that plaintiffs can sometimes sue state officials for prospective injunctive relief to prevent future statutory or constitutional harms." *Munoz v. Supr. Ct. of L.A. Cnt'y*, 91 F.4th 977, 980 (9th Cir. 2024). To invoke this exception, there must be "some connection" between the named state official and enforcement of the challenged state law. *Ex parte Young*, 209 U.S. at 157; *see*

---

[1] The State also argues that the doctrine of issue preclusion prevents certain Plaintiffs from litigating sovereign immunity as they lost this argument in litigation in Utah and Louisiana. (*See* Doc. 39 at 17–18 (citing *Free Speech Coal. v. Leblanc*, 697 F. Supp. 3d 534 (E.D. La. 2023) and *Free Speech Coalition v. Anderson*, 685 F. Supp. 3d 1299 (D. Utah 2023), *aff'd* 119 F.4th 732 (10th Cir. 2024)).) However, issue preclusion requires, *inter alia*, that the "the issue at stake [be] identical in both proceedings." *Love v. Villacana*, 73 F.4th 751, 754 (9th Cir. 2023). Whether sovereign immunity bars a particular action depends on the enforcement authority of the official in question, *see Ex parte Young*, 209 U.S. at 159–60, and that authority varies across different jurisdictions.

3

*Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam) ("[T]here must be a connection between the official sued and enforcement of the allegedly unconstitutional statute, and there must be a threat of enforcement."). "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cnty. Bar. Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Nevertheless, "the 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond a generalized duty[;] . . . [t]hat connection does not need to be primary authority to enforce the challenged law, nor does the attorney general need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." *Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th Cir. 2024) (alterations and internal quotation marks omitted).

Here, following its amendment, the Age Verification Act "may only be enforced by individuals claiming damages [under this section]." Mont. Code Ann. § 30-14-159(6). Plaintiffs insist that the Montana Attorney General bears "some connection" to its enforcement in two ways: his general enforcement authority conferred by the Montana Consumer Protection Act and the Department of Justice's obligation to oversee Montana's digital identification card system. Plaintiffs' second argument is persuasive.

4

A.  **Authority under the Consumer Protection Act**

Plaintiffs first argue that the Department of Justice, of which the Attorney General is the head, is responsible for various enforcement measures under the Consumer Protection Act, *see* Mont. Code Ann §§ 30-14-101, *et seq.*, and the 2025 amendment to § 30-14-159 "did nothing to strip the [Attorney General] of powers and duties conferred" elsewhere in that Act. (Doc. 44 at 7.) More specifically, the Attorney General "may bring an action . . . to restrain by temporary or permanent injunction or temporary restraining order the use of [an] unlawful method, act, or practice," Mont. Code Ann. § 30-14-111, and "may recover on behalf of the state a civil fine of not more than $10,000 for each violation" where there has been a judicial finding of willfulness, Mont. Code Ann. § 30-14-142(2). In response, the State argues that the amended language of § 30-14-159(6), primarily the use of the word "only", divested the Attorney General of any general enforcement power. The State is correct.

The "general/specific canon" of statutory construction "applie[s] to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific prohibition is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). That canon also applies where "a general authorization and a more limited, specific authorization exist side-by-side."

5

*Id.* "There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, violating the cardinal rule that, if possible, effect shall be given to every clause and part of a statute. The specific authorization must be complied with." *Id.* (internal citation and quotation marks omitted). Here, Plaintiffs cannot rely on the broad enforcement language of the Consumer Protection Act to negate the more specific, limiting language of the statute at issue. As amended, the Age Verification Act "may *only* be enforced by individuals claiming damages [under this section]." Mont. Code Ann. § 30-14-159(6) (emphasis added). Accordingly, the Consumer Protection Act's general enforcement provisions do not form "some connection" between the Attorney General and the challenged law. *Ex parte Young*, 209 U.S. at 157.

### B. Age Verification Methods

Plaintiffs alternatively argue that the necessary connection arises under the "age verification methods" permitted by § 30-14-159(7)(h). Such "[r]easonable age verification methods" include either "a digitized identification card" or "a commercial age verification system." Mont. Code Ann. § 30-14-159(7)(h). Under Montana law, the Department of Justice is obligated to "adopt rules governing the issuance, renewal, and cancellation of identification cards," and to "establish a program that allows every qualifying applicant for a driver's license the option to acquire a digital version of" his or her license. Mont. Code Ann. § 61-14-201(18),

6

(23). The State argues that this obligation is insufficient to make the requisite connection under *Ex parte Young*, relying heavily on the Tenth Circuit's decision in *Free Speech Coalition v. Anderson*, 119 F.4th 732 (10th Cir. 2024). Though a close question, Plaintiffs have the better argument.

In *Anderson*, the Tenth Circuit held that the Commissioner of the Utah Department of Public Safety's authority over the state digital driver's license program "neither enforce[d] nor g[a]ve[] effect to" Utah's similar age-verification act.[2] 119 F.4th at 736–38. More specifically, the court explained that the

> program is not required to and does not currently provide for online age verification. Moreover, the Act and the . . . program exist in parallel: neither depends on the other. So even if the . . . program did provide for online age verification, the Commissioner supervises that program independently from the Act and not as a means of enforcing or giving effect to the Act. And on the other hand, if the . . . program did not exist, compliance with the Act would still be possible via the other verification methods, and private parties could still assert violations of the Act.

*Id.* at 738. However, as explained by the dissent in *Anderson*, "the Commissioner's oversight of the program—the only state-approved compliance mechanism contemplated in [the challenged law]—need not be established at the same time, or in the same section of the code . . . . Nor need the Commissioner's

---

[2] The Tenth Circuit also held that the Attorney General lacked authority based on "his general legal authority over the state of Utah." 119 F.4th at 739. Plaintiffs have not made this generalized argument here, nor would it succeed under the plain language of *Ex parte Young*. *See* 209 U.S. at 157.

7

duty be a mandatory one. The important thing is that 'it exists.'" *Id.* at 744 (Phillips, J., dissenting in part) (quoting *Ex parte Young*, 209 U.S. at 157).

The dissent in *Anderson* tracks more closely the Ninth Circuit's analysis of the necessary "connection," which "demands merely that the implicated state official have a relevant role" and does not require "primary authority to enforce the challenged law" or "the full power to redress plaintiff's injuries." *Matsumoto*, 122 F.4th at 803 (internal quotation marks omitted). Here, the Department of Justice's role in Montana digital identification system meets that minimal standard: its obligations are "relevant" to the administration of the verification part of the Age Verification Act, although the Department (and therefore the Attorney General) is not the primary authority for its enforcement nor does it have the full power to redress Plaintiffs' alleged injuries under the Act. Yet that is arguably enough under *Ex parte Young*. *See id.*

## II. Standing

But even if the above connection is sufficient in the context of sovereign immunity, the State further argues that Plaintiffs lack standing because they cannot show that any injunction regarding the Attorney General could or would prevent private party enforcement of the statute. To have Article III standing, a plaintiff must allege: (1) an injury-in-fact (2) that is "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision."

8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The State argues that Plaintiffs' claims fail on the third requirement because this Court cannot provide redress for the injury posed by the private right of action created under the Act. That argument is persuasive.

In *Whole Woman's Health,* the Supreme Court held that the Texas Attorney General's general authority to impose civil penalties under one part of the Texas Code was insufficient to confer enforcement authority over an abortion law subject to private enforcement established under a different part of the Code. *Id.* at 44. But more importantly, the Court explained that even if it found such enforcement authority existed,

> doing so would only expose another [problem]. Supposing the attorney general did have some enforcement authority under [the challenged law], the petitioners have identified nothing that might allow a federal court to parlay that authority . . . into an injunction against any and all unnamed private persons who might seek to bring their own . . . suits.

*Id.* (citing *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 (1939)). Plaintiffs face the same problem here. Even if this Court were to enjoin the Attorney General's "participation" in the enforcement of the Age Verification Act, (Doc. 37 at 46), it would do nothing to prevent private persons from pursing suit, *see* Mont. Code Ann. § 30-14-159(3)(a). Thus, the "connection" described above seems to be a moot point as "no court may lawfully enjoin the world at large or purport to enjoin challenged laws themselves." *Whole Woman's Health,* 595 U.S.

9

at 44 (internal citations and quotation marks omitted). Likewise, any declaration as to the legality of the statute would extend no further than the "legal rights of the parties," *Aetna Life Ins. Co. v. Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937) (emphasis added), which does not include private individuals that can independently file suit.[3] Because the Court cannot provide the redress for the injuries alleged, Plaintiffs lack Article III standing.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the State's motion to dismiss (Doc. 38) is GRANTED.[4] The Clerk is directed to enter judgment in favor of the State and close the case file.

DATED this 6th day of August, 2025.

Donald W. Molloy, District Judge
United States District Court

---

[3] Notably, in Montana, "a court, under its equity powers, may award attorney fees to make an injured party whole." *Braach v. Graybeal*, 988 P.2d 761, 763 (Mont. 1999) (citing *Foy v. Anderson*, 580 P.2d 114, 116–17 (Mont. 1978)). Specifically, such fees may be awarded "where a party has been forced to defend against a wholly frivolous or malicious action." *Id.* Plaintiffs have identified serious problems with the Age Verification Act that could make attempts to enforce it "wholly frivolous" and therefore subject to fee shifting.

[4] On June 27, 2025, the United States Supreme Court decided *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. ___, 145 S. Ct. 2291 (2025), which addressed a First Amendment challenge to an almost identical law in Texas. The parties supplementally briefed *Paxton*, (*see* Docs. 46, 47, 48), but this issue need not be addressed because this matter is resolved on the State's motion to dismiss.